**O**

# United States District Court
# Central District of California

ZAHRA SHAHIM,

           Plaintiffs,

    v.

UNITED STATES OF AMERICA, et al.,

           Defendants.

Case № 2:21-cv-02401-ODW (AGR)

**ORDER GRANTING DEFENDANT UNITED STATES'S MOTION TO DISMISS [77]**

## I.  INTRODUCTION

Plaintiff Zahra Shahim brings suit against Defendants the United States of America[1]; Cornerstone Development Partners, Inc.; Moulton Plaza, L.L.C.; and Laguna Woods Pavilion Center, L.L.C.[2] for personal injuries sustained when she tripped and fell during an active shooter drill.  (First Am. Compl. ("FAC"), ECF No. 73.)  Before the Court is the United States' motion to dismiss the operative FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).  (Mot. Dismiss FAC ("Mot." or "Motion"), ECF. No. 77.)  Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision

---

[1] Shahim originally sued two individual government employees.  Upon the United States' request made pursuant to 28 U.S.C. § 2679(d), the Court substituted the United States as the sole government Defendant and dismissed the two individuals.  (Substitution Order, ECF No. 110.)

[2] Shahim sued additional Defendants but has since dismissed them.

without oral argument.   Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.   For the reasons described below, the Court **GRANTS** the Motion.

## II.    BACKGROUND

The United States Department of Veteran Affairs ("VA") contracts with Valor Healthcare[3] to deliver medical care to veterans.   (Mot. 3.)   Shahim is a doctor employed by Valor Healthcare at a facility in Laguna Hills, California.   (FAC 4[4].) Now-dismissed Defendants John (Duy D.) Nguyen and Paul Bellamy are police officers in the Veteran Affairs Police Department ("VAPD") who provided their services at the Laguna Hills Valor Healthcare facility.   (*Id.* at 9.)

On September 5, 2019, Nguyen and Bellamy planned and conducted an active shooter drill at Valor Healthcare.   (*Id.* at 12.)   Prior to conducting the drill, Nguyen explained to Shahim and her colleagues what to expect during the drill and directed them to "run if they could."   (*Id*. at 13.)   Nguyen then left for a few moments and returned later with "what appeared to be a real-looking gun, shooting in a terrifying manner." (*Id*.)   This caused a stampede of people rushing towards the back exit.   (*Id*.)

Located at the back exit of Valor Healthcare is a stairway with metal grating treads typical of a loading dock.   (*Id*. at 9–10.)   When Shahim exited the building using this back exit, the heel of her shoe caught in between the metal grating treads, and she fell, sustaining severe personal injuries.  (*Id*. at 8, 13–14.)

In the operative FAC, filed November 10, 2021, Shahim sets forth three claims, for (1) violation of the Federal Tort Claims Act ("FTCA") against the United States; (2) negligence against all Defendants; and (3) premises liability against Cornerstone. The United States now moves to dismiss the FAC for lack of subject matter

---

[3] Valor Healthcare was named as a Third Party Defendant in Third Party Plaintiff Valuerock Realty Partners, Inc.'s Third Party Complaint.   (Third Party Compl., ECF No. 27.)   Valuerock has since dismissed the entire Third Party Complaint, including Valor Healthcare.
[4] The paragraphs in the FAC are misnumbered beginning on page eight of the FAC.   For ease of reference, the Court cites to the page numbers of the FAC.

1  jurisdiction on the grounds that the FTCA's discretionary function exception,
2  28 U.S.C. § 2680(a), bars Shahim's claims against the United States.  (Mot. 8.)

3                              **III.    LEGAL STANDARD**

4         Pursuant to Rule 12(b)(1), a party may move to dismiss based on the court's
5  lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1)
6  jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*,
7  373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "accepts the truth of the
8  [nonmoving party's] allegations but asserts that they are insufficient on their face to
9  invoke federal jurisdiction."  *Leite v. Crane*, 749 F.3d 1117, 1121 (9th Cir. 2014).
10 Conversely, a factual attack "contests the truth of the plaintiff's factual allegations,
11 usually by introducing evidence outside the pleadings."  *Id*.

12        "In resolving a factual attack on jurisdiction, the district court may review
13 evidence beyond the complaint without converting the motion to dismiss into a
14 motion for summary judgment."[5]  *Safe Air*, 373 F.3d at 1039.  The court "need not
15 presume the truthfulness of the plaintiff['s] allegations," *White v. Lee*, 227 F.3d 1214,
16 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the existence of
17 jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once
18 the moving party has converted the motion to dismiss into a factual motion by
19 presenting affidavits or other evidence properly brought before the court, the party
20 opposing the motion must furnish affidavits or other evidence necessary to satisfy its

21

22 [5] Shahim argues that the issue of federal jurisdiction is intertwined with the merits of her case, and
23 that, accordingly, the Court should treat the motion as an improvidently-made motion for summary
   judgment.  (Opp'n 9–11. ECF No. 81.)  However, in most cases, "with regard to the discretionary
24 function exception, . . . analysis of subject matter jurisdiction is distinct from . . . analysis of the
   merits." *Chadd v. United States*, 794 F.3d 1104, 1111–12 (9th Cir. 2015).  "[A]t step one of the
25 discretionary-function-exception analysis, all that matters is that there was, in fact, discretion." *Id*.
   at 1111.  Here, as discussed herein, the question of the application of the discretionary function
26 exception (that is: were Nguyen and Bellamy exercising discretion in a way that implicated policy?)
   is not intertwined with the merits questions of this case (principally: did any Defendant act
27 negligently in either conducting the active shooter drill or maintaining the property?).  As such, the
   Motion is properly brought as a Rule 12(b)(1) Motion and need not be treated as a summary
28 judgment motion.

burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003).

## IV.    DISCUSSION

The sovereign immunity of the United States implicates the Court's subject matter jurisdiction, and accordingly, a Rule 12(b)(1) Motion is a proper vehicle for raising the issue of the United States' sovereign immunity.  *See McCarthy*, 850 F.2d at  560 ("The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."); *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.").  Here, the United States argues that the action must be dismissed as against it because the conduct of Nguyen and Bellamy is shielded by the discretionary function exception of the FTCA, thus depriving the Court of subject matter jurisdiction.  The Court agrees and accordingly dismisses the United States with prejudice.

## A.    The Discretionary Function Exception of the FTCA

"As a sovereign, the United States is immune from suit unless it waives such immunity."  *Chadd*, 794 F.3d at 1108.  With the FTCA, the United States waived its sovereign immunity for personal injury, death, or loss of property claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant."   28 U.S.C. § 1346(b)(1).  The FTCA "did not waive the sovereign immunity of the United States in all respects, however; Congress was careful to except from the [FTCA's] broad waiver of immunity several important classes of tort claims."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). One such exception is the discretionary function exception provided by 28 U.S.C. § 2680(a).

The discretionary function exception reinstates the United States's sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  It applies when "(1) the act or omission on which the claim is based involves an element of judgment or choice; and (2) that judgment is of the kind that the discretionary function exception was designed to shield," namely, public policy decisions.  *Miller v. United States*, 992 F.3d 878, 885 (9th Cir. 2021).  "[T]o avoid dismissal, a plaintiff must allege facts that support a finding that the government employee's negligence was not grounded in policy judgments."  *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020).

The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  *Varig Airlines*, 467 U.S. at 808.  It "prevent[s] judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Id*. at 814.

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged."  *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002); *Terbush v. United States*, 516 F.3d 1125, 1130 (9th Cir. 2008) ("Courts have been reluctant to create formulaic categories or to demarcate flashpoints on this spectrum to illuminate which governmental decisions fall within the discretionary function exception.").  The United States bears the burden of proving that the discretionary function exception applies.  *Chadd*, 794 F.3d at 1108.

In this case, as explained below, the United States meets its burden of establishing both elements of the discretionary function exception, thereby demonstrating a lack of subject matter jurisdiction both facially and factually.

1          *1.      Element of Judgment or Choice*

2          The first element in the discretionary function exception analysis "reflects the

3    obvious fact that, under the plain text of the statute, the exception covers only acts that

4    are *discretionary* in nature."   *Miller*, 992 F.3d at 885.   Thus, if a government policy

5    "allow[s] room for implementing officials to make independent policy judgments, the

6    discretionary function exception protects the acts taken by those officials in the

7    exercise of this discretion."   *Lam*, 979 F.3d at 674.   "But if the policy leaves no room

8    for an official to exercise policy judgment in performing a given act, or if the act

9    simply does not involve the exercise of such judgment, the discretionary function

10   exemption does not bar a claim that the act was negligent or wrongful."   *Id.* at 673;

11   *see Terbush*, 516 F.3d at 1129("If there is . . . a statute or policy directing mandatory

12   and specific action, the inquiry comes to an end because there can be no element of

13   discretion when an employee 'has no rightful option but to adhere to the directive.'"

14   (quoting *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988))).   Courts should

15   focus the inquiry on the nature of the conduct rather than the status of the actor.

16   *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011).

17         To determine whether the first element of the discretionary function exception

18   analysis is met in this case, the Court "must closely scrutinize the [VA's] policies in

19   their totality to determine whether they are discretionary or mandatory."   *Lam*,

20   979 F.3d at 675.   Here, Appendix F of the VA Handbook provides policies, goals, and

21   guidelines for VA employees to follow in preparing for and responding to active

22   threats occurring at VA facilities.   (Mot. 7; *id.* Ex. 1 ("App."), ECF No. 77-1.)   An

23   active threat is defined as (1) a person with a knife, explosive, blunt object, or (2) an

24   active shooter engaged in killing or attempting to kill with a firearm.   (App. 3.)   The

25   VA's goal is to "prevent or deter such incidents from occurring," "to maintain safe and

26   secure workplaces," and to provide "a safe, secure, and welcoming environment."

27   (*Id.*)   The Appendix further states that "Active Threat Response Training, developed

28   jointly by the VA Law Enforcement Training Center and VHA, will be required for all

VA employees.  The primary concepts presented in that training (Evacuate, Evade, Engage) will be tested in regular exercises." (*Id.* at 7.)

Thus, the Appendix leaves VAPD officers Nguyen and Bellamy discretion to achieve the VA's policies of deterrence, prevention, and safety, satisfying the first element in the discretionary function exception analysis.  Nguyen and Bellamy exercised discretion by deciding to conduct an active shooter drill, as opposed to a drill involving an individual with a knife, explosive, or blunt object.  Similarly, Nguyen and Bellamy exercised discretion by deciding to conduct a live action drill, rather than a presentation, seminar, or other demonstration.  Nguyen and Bellamy further exercised discretion by deciding (1) when to conduct the active shooter drill, (2) that Valor Healthcare was the appropriate location to perform the drill, and (3) the method and manner of conducting the active shooter drill.  Because each facility is different, Nguyen's and Bellamy's decision to conduct a drill at the Valor Healthcare facility necessarily invoked an additional layer of discretion to ensure that their plan was tailored to the facility's specific needs.

Although the Appendix required all VA employees to undergo Active Threat Response Training, it did not mandate exactly how Nguyen, Bellamy, and others were to conduct such training, leaving such individuals with considerable discretion.  *Cf. Lam*, 979 F.3d at 677 ("[U]se of a few mandatory words like 'shall' does not create a mandatory policy if the policy otherwise allows for discretion.").  This supports a finding that Nguyen and Bellamy have discretion in achieving the VAPD's goals.  *See id.* at 679 (finding discretion where park rangers were tasked with inspecting and removing hazardous trees without any "requirement, checklist, or criteria" directing them how to do so); *see also Chadd*, 794 F.3d at 1110–11 (finding that park rangers had discretion to manage exotic animals threatening public safety because park rangers' policy manual provided no mandatory course of action).  Accordingly, the first element of the discretionary function exception analysis is satisfied.

1    *2.    Judgment Shielded by the Discretionary Function Exception*

2          To analyze the second element of the discretionary function exception, courts

3    inquire whether the challenged government action or decision is "based on social,

4    economic, and political policy."  *Chadd*, 794 F.3d at 1109.  In particular, "when a

5    decision requires an agency to balance competing safety considerations, that decision

6    *is* susceptible to policy analysis." *Bailey v. United States*, 623 F.3d 855, 862 (9th Cir.

7    2010). As an example, decisions regarding the training of employees, including

8    training them to respond to threats, "implicate[] competing policy considerations, such

9    as employee and public safety, economic resources (including the number of

10   individuals to be trained, the extent and cost of training, and the agency's resources),

11   impact on the agency's relationship with contractors, and the agency's goals and

12   duties." *Kelly v. United States*, 241 F.3d 755, 762 (9th Cir. 2005); *cf. Miller*, 992 F.3d

13   at 886 ("[D]ecisions relating to the . . . training . . . of employees usually involve

14   policy *judgments* of the type Congress intended the discretionary function exception

15   to shield.").

16         The focus of the discretionary function exception inquiry is "not on the agent's

17   subjective intent in exercising the discretion conferred by statute or regulation, but on

18   the nature of the actions taken and on whether they are susceptible to policy analysis."

19   *Chadd*, 794 F.3d at 1109.  Moreover, if "a regulation allows the [government]

20   employee discretion, there is a strong presumption that a discretionary act authorized

21   by the regulation involves consideration of the same policies which led to the

22   promulgation of the regulations." *Id*.

23         Here, Nguyen's and Bellamy's actions are susceptible to policy analysis

24   because they substantially implicate the competing policy concerns of employee

25   safety, public safety, government resources, and government relationships with

26   contractors.   The starting point is the "strong presumption" that Nguyen's and

27   Bellamy's actions are grounded in policy.  *See id.*  This presumption arises because the

28   Appendix grants Nguyen and Bellamy discretion to decide the time, place, and

manner of an active threat drill at a VA facility, and in turn, the VA's active threat regulations are grounded in policy. From these facts, the presumption arises that Nguyen's and Bellamy's discretionary decisions, like the VA's underlying active threat policy itself, involve policy considerations. *See id.*

This presumption is supported by the facts of the case and the evidence before the Court. The Appendix directs VAPD officers to consider "local policies; communication plans; physical design of the facility; [and] response plans for staff and visitors"; and to conduct "exercise and testing to ensure the effectiveness of the planning and to reinforce appropriate responses." (App. 6.) Nguyen's and Bellamy's decision to conduct an active shooter drill and carry it out in the manner they did implicates policy concerns because their decision necessarily involved balancing the competing interests of (1) the safety of veterans, medical staff, and other visitors at the facility; (2) the VA's relationship with Valor Healthcare; and (3) the VA's own policy goals, including training and preparedness for an active threat. Therefore, Nguyen's and Bellamy's decisions are "'susceptible' to policy analysis and [are] thus protected by the discretionary function exception." *Id.* at 863 (quoting *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002)).

In *Whisnant v. United States*, the Ninth Circuit articulated the general principle that "the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not." 400 F.3d 1177, 1181 (9th Cir. 2005). Proceeding from this principle, Shahim argues that the Appendix dictates the VA's established active threat policy, that Nguyen and Bellamy "were simply negligent in executing the policy," and that the discretionary function exception therefore does not immunize their actions. (Opp'n 14.) However, the *Whisnant* opinion itself acknowledges that the implementation of a course of governmental action may indeed be shielded by the discretionary function exception when the implementation itself involves weighing policy concerns. *Whisnant*, 400 F.3d at 1182 n.3. As discussed, the Appendix offers several different factors for

VAPD officers to consider when exercising their discretion and designing active threat responses specific to the facilities they patrol. Under applicable case law, the balancing of these factors implicates policy.[6]

This case is similar to *Barian v. United States*, 728 F. App'x 703 (9th Cir. 2018), in which the Ninth Circuit, in an unpublished opinion, found that a police officer's decisions regarding the time, place, and manner of a training exercise "involve[d] an element of judgment or choice" and noted that these decisions were "'susceptible to a policy analysis' in that they involved at least 'two competing policy interests,'" namely, (1) the need to conduct the training to ensure readiness for *future* threats and (2) the well-being of those on the premises during the *present* training. *Id.* at 704 (quoting *Chadd*, 794 F.3d at 1111–12). All these considerations apply to Shahim's case. Thus, the discretionary function exception applies, and the Court must dismiss the FTCA claim.

The United States launched a facial and factual attack on subject matter jurisdiction, and it successfully demonstrates that, both facially and factually, the discretionary function exception applies and that the Court thus lacks subject matter jurisdiction over the FTCA claim. Shahim does not request leave to amend her jurisdictional allegations or an opportunity to present additional evidence. The Court accordingly concludes that Shahim cannot offer any additional facts that might change the Court's fundamental holding with respect to the discretionary function exception. The FTCA claim is therefore dismissed with prejudice and without leave to amend.

---

[6] Even if Nguyen and Bellamy acted in a way that improperly disregarded these factors in planning and conducting the active shooter drill—that is, even if they abused their discretion—the discretionary function exception still applies. *Lam*, 979 F.3d at 673; 28 U.S.C. § 2680(a) (discretionary function exception applies "whether or not the discretion involved be abused"); *see Chadd*, 794 F.3d at 1113 ("Whether Park officials actually took into consideration the policy objectives listed in the Service's guidelines is irrelevant because the challenged decision need not be *actually* grounded in policy considerations, but must be, by its nature, *susceptible* to policy analysis.").

**B.    Negligence and Premises Liability**

Shahim's FAC is based upon federal question jurisdiction anchored by her FTCA claim.  (FAC 2–3); 28 U.S.C. § 1331.  Her remaining claims for negligence and premises liability against Cornerstone, Moulton Plaza, and Laguna Woods Pavilion Center are based upon supplemental jurisdiction.  28 U.S.C. § 1367.  Because Shahim's FTCA claim is barred, Shahim must establish an independent basis for the Court's subject matter jurisdiction over her remaining claims in order to proceed in federal court.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by the Constitution and statute."); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("[A] court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action.").

Federal question jurisdiction is the only basis for subject matter jurisdiction Shahim alleged in the FAC.  Ordinarily, courts in the Ninth Circuit decline supplemental jurisdiction and dismiss state law claims after dismissing all claims over which the court has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.")  Accordingly, the Court **GRANTS** Shahim leave to amend the FAC for the sole purpose of alleging a valid basis for this Court's subject matter jurisdiction over her remaining claims for negligence and premises liability.  Shahim shall file her amended complaint no later than **twenty-one (21) days** from the date of this Order.  Failure to do so will be deemed confirmation that this Court lacks original jurisdiction over the remaining claims and will result in the Court declining supplemental jurisdiction over the remaining claims and dismissing the case.

1

2   **V.    CONCLUSION**

3       For the reasons discussed above, the Court **GRANTS** the United States's

4   Motion to Dismiss.  (ECF No. 77.)  Plaintiff's sole claim against the United States is

5   dismissed **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

6   Furthermore, Plaintiff is **GRANTED** leave to amend the FAC for the sole purpose of

7   alleging a valid basis for subject matter jurisdiction.  Plaintiff's amended complaint is

8   due no later than **twenty-one (21) days** from the date of this Order.

9

10  **IT IS SO ORDERED.**

11

12  May 23, 2022

13

14                                                **OTIS D. WRIGHT, II**

15                    **UNITED STATES DISTRICT JUDGE**